**E. A. STROUT WESTERN REALTY AGENCY, INC., Plaintiff and Appellant,**

v.

**Owen H. BRODERICK, Defendant and Respondent.**

**No. 13479.**

Supreme Court of Utah.

April 30, 1974.

S. Rex Lewis, Howard, Lewis & Petersen, Provo, for plaintiff and appellant.

Clair M. Aldrich, Provo, for defendant and respondent.

ELLETT, Justice:

This appeal is from a judgment against the plaintiff and in favor of the defendant on a law action to recover a real estate broker's commission based on an exclusive listing agreement.

The defendant is a building contractor. He buys land, erects houses, and sells them to the public. He has utilized the services of the plaintiff in past transactions and in fact used the efforts of plaintiff to trade one of his homes to a third party for a home and cash. He paid a commission to plaintiff for this service. However, the plaintiff was able to get the third party to reduce his price by the amount of the commission. As a part of the same transaction the defendant signed what is denominated "Exclusive Right to Sell" the acquired home consisting of a printed form with only two blanks to be filled in, viz.: the expiration date and the rate of commission. The dispute in this case involves the following language:

> If a buyer or transferee ready, willing and able to buy or exchange for this property is procured by you or by anyone else, including myself, I agree to pay you a commission of 6% of the selling price, or a minimum commission of $200, whichever is greater.

The defendant persuaded the trial court that the language above was not correct and that he agreed to pay a commission only in case the plaintiff sold the home.

The agreement was dated September 16, 1971, and was to expire according to the writing in the blank space on March 6, 1972. The other blank space had the figure 6 written in the blank for the per cent of the selling price to be paid as a commis-

sion. The defendant sold the home on or about November 12, 1971, and refused to pay the commission to the plaintiff. He claims that some blank spaces on the back of the agreement were not filled in when he signed his name.

Those blanks have to do with a description of the home and equipment located therein as well as the selling price. We think it is immaterial to this action whether those blanks were filled in or not. There is no claim that the date and per cent written into the agreement were not correct.

■ The question presented to the trial court and urged on appeal is whether the defendant can vary a clear, unambiguous term of a written contract by parole evidence.

Two witnesses for the plaintiff testified that all blanks on both sides of the agreement were filled in before the defendant signed it. They also testified that when he said he wanted to reserve the right to make his own sale, they, as agents of the plaintiff, told him it would have to be an exclusive listing or they would not undertake to sell it. The defendant testified as follows:

Q. At that time what was said and by whom?

A. I don't remember everything. I told them if they sold the house they could have the commission at that time. I don't know if they went along with it.

Q. Was that your understanding when you signed this document?

A. Yes.

The defendant further testified regarding the blanks in the agreement as follows:

A. The printed part was in there, yes.

Q. Was the six per cent filled in?

A. They might have just filled that in with their pen at the time I signed it.

Q. Did you have a discussion as to how long the listing agreement was to be for?

A. I don't remember. The form says six months. That is all.

Q. That generally was your agreement?

A. That is what most real estate contracts are.

Q. So far as you and I are concerned the only thing we are hung up on is whether you should have paid a commission if you sold it yourself?

A. That's right.

As to the agreement itself, the defendant testified:

Q. When you signed it you knew you were obligating yourself to pay a real estate commission, did you not?

A. No.

Q. You didn't know you were obligating yourself to pay a real estate commission?

A. If they sold the house I was.

Q. You knew that you were to pay a six per cent commission if the real estate company sold the house? You knew that?

A. Yes.

Q. You knew that at the time you signed that agreement?

A. Yes.

It is obvious that by the terms of the written agreement there was a promise to pay a commission to plaintiff if the home was sold during the six months following the listing agreement.

■ Parole evidence may be received to clarify ambiguous language in a contract, to show what the agreement was relative to filling in blanks, and to supply omitted terms which were agreed upon but inadvertently left out of the written agreement.[1] However, under the general rule, which is applicable here, parole evidence may not be given to change the terms of a written agreement which are clear, definite, and unambiguous.[2] To permit that

1. Fox Film Corp. v. Ogden Theatre Co., Inc., 82 Utah 279, 17 P.2d 294 (1932).

2. B. T. Moran, Inc. v. First Security Corp., 82 Utah 316, 24 P.2d 384 (1933); Hatch v. Adams, 8 Utah 2d 82, 329 P.2d 285 (1958).

**146**

would be to cast doubt upon the integrity of all contracts and to leave a party to a solemn agreement at the mercy of the uncertainties of oral testimony given by one who in the subsequent light of events discovers that he made a bad bargain.

Written words can be examined so as to ascertain what they stand for in connection with particular conduct or particular objects. Thus expressions of the parties prior to and contemporaneous with the execution of a written instrument may be helpful in understanding the meaning of the language used. However, the defendant here does not seek to explain the meaning of a paragraph. He simply wants the court to eliminate it in its entirety. This the courts cannot do.

The Minnesota case of Cargill Commission Co. v. Swartwood, 159 Minn. 1, 198 N.W. 536 (1924), is in point. There the defendant in writing guaranteed any and all sums of money furnished by plaintiff to a flour milling corporation. When sued upon his contract, he contended that it was orally agreed that the guaranty should only apply to sums of money furnished for the purchase of grain locally. The jury found for the defendant, but the Minnesota Supreme Court reversed and in speaking about the parole evidence rule stated at page 538:

. . . Without that rule there would be no assurance of the enforceability of a written contract. If such assurance were removed today from our law, general disaster would result, because of the consequent destruction of confidence, for the tremendous but closely adjusted machinery of modern business cannot function at all without confidence in the enforceability of contracts. . . .

The trial court erred in permitting oral testimony tending to vary the disputed paragraph and in finding that the agreement as signed was not the agreement of the parties.

The judgment is reversed and the case remanded with directions to enter judgment for the plaintiff as prayed. Costs are awarded to the appellant.

CALLISTER, C. J., and HENRIOD, CROCKETT and TUCKETT, JJ., concur.