Earl WARD, Plaintiff and Appellant,

v.

INTERMOUNTAIN FARMERS ASSO-
CIATION, a Utah corporation, De-
fendant and Appellee.

No. 940109.

Supreme Court of Utah.

Nov. 15, 1995.

Thompson E. Fehr, Ogden, for plaintiff.

John R. Lund, Julianne Blanch, Salt Lake City, for defendant.

DURHAM, Justice:

Plaintiff Earl Ward appeals from the district court's grant of summary judgment in favor of defendant Intermountain Farmers Association ("IFA"). We reverse.

■ "Before we recite the facts, we note that in reviewing a grant of summary judgment, we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Higgins v. Salt Lake County*, 855 P.2d 231, 233 (Utah 1993). "We state the facts in this case accordingly." *Id.*

IFA is a Utah corporation that conducts business in both Utah and Idaho. In March 1988, Ward contracted with IFA, at its place of business in Cache County, Utah, to pur-

chase three types of fertilizer and the herbicide Treflan. As part of the contract, IFA agreed to apply the fertilizers and Treflan to Ward's nineteen-acre field of safflower. The safflower field is located near Ward's residence immediately across the Idaho border in Dayton, Idaho.

On March 25, 1988, Robert Evans, an IFA employee residing in Utah, sprayed Ward's safflower field. Evans holds a Utah commercial applicator's license which, through a reciprocity agreement between Idaho and Utah, allows Evans to work as an applicator in Idaho. Prior to spraying Ward's safflower, Evans had used the sprayer apparatus to apply Velpar L, a powerful herbicide, to a field in Utah. Evans did not properly clean the sprayer tank before filling it with the chemicals that Ward had ordered. As a result, the Velpar L residue in the tank mixed with the fertilizer and the Treflan, and the mixture was sprayed on Ward's safflower.

Sometime after Evans sprayed Ward's crop, Ward noticed that a significant amount of the safflower was dying. Ward contacted IFA immediately. Representatives of IFA repeatedly assured Ward that IFA "would take care" of him. After tests conducted by Utah State University revealed that the injury to the safflower was consistent with exposure to Velpar L, representatives of IFA told Ward that they would spray the field to neutralize the Velpar L. IFA later asserted, however, that the potential harm was so slight that it didn't justify the cost of neutralization.

Ward and IFA eventually entered into settlement negotiations. At the conclusion of the negotiations, IFA representatives presented the following release agreement to Ward:

## AGREEMENT

Upon payment of $4901.27, receipt of which is hereby acknowledged ($900.00 check and $4001.27 credit to my account), I, Earl H. Ward, hereby agree to release and hold harmless Intermountain Farmers Association for any and all damages caused

by the spraying of my approximate nineteen acres of safflower.

Ward testified via affidavit that he originally refused to sign the release agreement because he was concerned about the lingering effects of the Velpar L on the beans which would be planted in the field the following spring. Upon hearing this concern, IFA representatives told Mr. Ward not to worry because they were sure there would be no problem. They further indicated that if a problem arose, they would address it at that time. According to Ward, the IFA representatives indicated that "they had to settle one year at a time; so, we needed to reach a settlement on the safflower." IFA representatives also brought Du Pont representative Robert M. Jencks to Ward's home.[1] Jencks told Ward that if he were Ward, "he would go ahead and plant beans in the field." Ward ultimately signed the release on November 28, 1988.

After the beans which Ward planted in the spring of 1989 began to die, representatives of IFA again visited Ward's field. Ward testified via affidavit that IFA representative Brent Kunz stated: "Earl, this is not your problem; it is our problem. We told you we would take care of you, and we will." Despite these representations, IFA refused to compensate Ward for the damage to his beans.

Ward filed suit against IFA on March 23, 1992, to recover for the damages to his bean crop and for crop damage consistent with the application of Velpar L that has appeared every year since IFA sprayed the safflower.

IFA moved for summary judgment on the following grounds: (i) Ward's action was barred by Idaho's products liability statute of limitations, Idaho Code § 6–1407; (ii) Ward's action was barred by Idaho's professional malpractice statute of limitations, *id.* § 5–219; and (iii) the release agreement precluded Ward's claim. In response, Ward argued that Utah law governed this action and that no Utah statute of limitations barred his claim. Ward also asserted that even if Idaho law applied, his action was not barred by any Idaho statute of limitations. Finally, Ward

contended that the release agreement was ambiguous and extrinsic evidence demonstrated that it applied only to the damage to the safflower crop.

The district court granted IFA's motion for summary judgment. According to the district court, Ward's action was governed by Idaho law and was time-barred under Idaho's products liability and professional malpractice statutes of limitations. The district court also held that, in the alternative, the release agreement unambiguously released IFA from all claims for future damages. Ward appeals.

We first state the applicable standard of review. Summary judgment is appropriate only when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Utah R.Civ.P. 56(c); *Higgins,* 855 P.2d at 235. Because entitlement to summary judgment is a question of law, we accord no deference to the trial court's resolution of the legal issues presented. *Higgins,* 855 P.2d at 235; *Ferree v. State,* 784 P.2d 149, 151 (Utah 1989). "We determine only whether the trial court erred in applying the governing law and whether the trial court correctly held that there were no disputed issues of material fact." *Ferree,* 784 P.2d at 151 (citing *Bushnell Real Estate, Inc. v. Nielson,* 672 P.2d 746, 749 (Utah 1983); *Bowen v. Riverton City,* 656 P.2d 434, 436 (Utah 1982)).

The first issue is whether Ward's action is time-barred. The trial court found, "This action is not one for breach of contract even though the complaint was so drafted." Instead, the trial court held that this is a tort action and is therefore barred by the malpractice and product liability statutes of limitations. This conclusion is unsupported by the pleadings and the law.

Ward has pleaded a simple and straightforward breach-of-contract action. IFA contracted with Ward to apply three fertilizers and the herbicide Treflan to Ward's field. IFA breached this contract by applying an entirely different combination of chemicals than the solution contracted for. Instead of applying the solution contracted for, IFA

---

1. Velpar L is manufactured by Du Pont.

applied a mix of fertilizers, Treflan, and Velpar L, a herbicide, thereby causing damage to Ward's field. Ward's complaint makes no reference whatsoever to strict liability, negligence, express or implied warranty, professional standards of care, or any other duty imposed by law. Nor does Ward's action impliedly rely on any of these principles. Rather, Ward's action is based on breach of specific terms of the contract between the parties.

Except for the extent of damage, the facts alleged in Ward's complaint are not disputed. Although such a fact scenario could also give rise to a tort claim, it contains all of the elements of a contract action. Ward may therefore elect in this case to waive the tort and sue on the contract.[2] Nothing before us indicates that Ward has used the pleadings

to manipulate or distort the gravamen of the action. Accordingly, under both Utah and Idaho limitations statutes for oral contract actions,[3] Ward's breach of contract claim was timely filed.[4]

■ We next consider whether the release agreement bars Ward's claims. Releases are contractual provisions and should be interpreted according to well-developed rules of contract interpretation. *See, e.g., Simonson v. Travis,* 728 P.2d 999, 1001–02 (Utah 1986); *Horgan v. Industrial Design Corp.,* 657 P.2d 751, 753 (Utah 1982). Ward argues that extrinsic evidence is necessary to understand what the parties intended to accomplish with the agreement and that consideration of extrinsic evidence is proper because the language of the agreement is ambiguous.[5]

---

**2.** Restatement (Second) of Torts § 899, cmt. b (1979) ("An act and its consequences may be both a tort and a breach of contract.... When this is so, the injured person, although barred by a statute from maintaining an action of tort may not be barred from enforcing his contractual ... right or vice versa."). This blackletter principle has been recognized and applied previously by this court. *See Brigham Young Univ. v. Paulsen Constr.,* 744 P.2d 1370, 1372–73 (Utah 1987) (holding that negligent failure to perform contractual duties may be brought as contract action and is not barred by tort statute of limitations); *see also Culp Constr. Co. v. Buildmart Mall,* 795 P.2d 650, 654 (Utah 1990) (holding that acts constituting breach of contract may also give rise to cause of action in tort); *accord DCR Inc. v. Peak Alarm Co.,* 663 P.2d 433, 435 (Utah 1983).

**3.** It is unclear whether the agreement was oral or written. Ward argues that the contract was written because a loadsheet and fieldsman's order generated by IFA memorialized the parties' contract in writing. We do not address this issue, however, as Ward's action is timely under the limitations statutes for both oral and written agreements in both Idaho and Utah. *See* Idaho Code § 5–217 (setting out four-year statute of limitations for action upon contract not founded upon written instrument); Idaho Code § 5–216 (setting out five-year statute of limitations for action based upon written contract); Utah Code Ann. § 78–12–25 (setting out four-year statute of limitations for action upon contract not founded upon written instrument); Utah Code Ann. § 78–12–23 (setting out six-year statute of limitations for action based upon written contract).

**4.** This holding makes it unnecessary for us to address Ward's arguments that we should apply the discovery rule, the doctrine of equitable es-

toppel, or the statute of limitations of the Uniform Commercial Code.

**5.** Ward also argues that consideration of extrinsic evidence is proper because IFA procured the release by fraud and because there was a mutual mistake between the parties. Ward has failed, however, to meet the requirements of rule 9(b) of the Utah Rules of Civil Procedure, stating that "all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The claims of fraud and mistake are not contained in Ward's pleadings and are therefore barred by rule 9(b) of the Utah Rules of Civil Procedure.

Ward would have us apply rule 15(b) of the Utah Rules of Civil Procedure to overcome the bar of rule 9(b). Rule 15(b) provides, "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Nothing before us indicates that Ward ever placed the issues of fraud or mistake before the trial court with the particularity required by rule 9(b). The mention of mutual mistake in IFA's motion for summary judgment is insufficient to invoke rule 15(b). IFA raised the issue of mutual mistake in its summary judgment motion only to note that consideration of the issue was barred because Ward had failed to raise it in his complaint and to note that Ward had not alleged any facts to support a claim for mutual mistake. Ward did not even address the issue of mistake in his memorandum in opposition to summary judgment.

Ward also directs us to a colloquy between the trial judge and Ward's counsel at the hearing on December 14, 1993, in which the issue of mutual mistake was allegedly addressed. This colloquy, however, relates only incidentally to the issue of mutual mistake. The term mutual mistake was

■ This court has held that as a principle of contract interpretation, the parol evidence rule has only a narrow application. *Hall v. Process Instruments & Control*, 890 P.2d 1024, 1026 (Utah 1995) (citing *Union Bank v. Swenson*, 707 P.2d 663, 665 (Utah 1985)). Simply stated, the rule operates, in the absence of invalidating causes such as fraud or illegality, to exclude evidence of prior or contemporaneous conversations, representations, or statements offered for the purpose of varying or adding to the terms of an integrated contract. *Hall*, 890 P.2d at 1026. Of course, "[n]o parol evidence that is offered can be said to vary or contradict a writing until by process of interpretation it is determined what the writing means." 3 Arthur L. Corbin, *Corbin on Contracts* § 579, at 412 (1960) [hereinafter *Corbin* ]. Accordingly, we have held that a court may consider extrinsic evidence if the meaning of the contract is ambiguous or uncertain. *Winegar v. Froerer Corp.*, 813 P.2d 104, 108 (Utah 1991) (citing *Faulkner v. Farnsworth*, 665 P.2d 1292, 1293 (Utah 1983)); *see also Hall*, 890 P.2d at 1026–27 (citing *Colonial Leasing Co. of New England, Inc. v. Larsen Bros. Constr.*, 731 P.2d 483, 487 (Utah 1986)). When determining whether a contract is ambiguous, any relevant evidence must be considered. Otherwise, the determination of ambiguity is inherently one-sided, namely, it is based solely on the " 'extrinsic evidence of the judge's own linguistic education and experience.' " *Pacific Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.*, 69 Cal.2d 33, 69 Cal.Rptr. 561, 563, 442 P.2d 641, 643 (1968) (quoting *Corbin* § 579, at 225 n. 5 (Supp.1964)). Although the terms of an instrument may seem clear to a particular reader—including a judge—this does not rule out the possibility that the parties chose the language of the agreement to express a different meaning. A judge should therefore consider any credible evidence offered to show the parties' intention.

■ While there is Utah case law that espouses a stricter application of the rule and

would restrict a determination of whether ambiguity exists to a judge's determination of the meaning of the terms of the writing itself, the better-reasoned approach is to consider the writing in light of the surrounding circumstances. *See, e.g.*, Restatement (Second) of Contracts § 212 & cmt. b (1979); *Corbin* § 579; *Pacific Gas & Elec. Co.*, 69 Cal.Rptr. at 563, 442 P.2d at 644; *Garden State Plaza Corp. v. S.S. Kresge Co.*, 78 N.J.Super. 485, 189 A.2d 448, 454–55 (1963); *C.R. Anthony Co. v. Loretto Mall Partners*, 112 N.M. 504, 508–09, 817 P.2d 238, 242–43 (1991). "[R]ational interpretation requires at least a preliminary consideration of all credible evidence offered to prove the intention of the parties ... so that the court can 'place itself in the same situation in which the parties found themselves at the time of contracting.' " *Pacific Gas & Elec. Co.*, 69 Cal.Rptr. at 565, 442 P.2d at 645 (quoting *Universal Sales Corp. v. California Press Mfg. Co.*, 20 Cal.2d 751, 128 P.2d 665, 672 (1942)); *see also Corbin* § 579. If after considering such evidence the court determines that the interpretations contended for are reasonably supported by the language of the contract, then extrinsic evidence is admissible to clarify the ambiguous terms. *See Winegar*, 813 P.2d at 108 (stating that if contract language is ambiguous or uncertain, court may consider extrinsic evidence); *see also Hall*, 890 P.2d at 1026–27 (citing *Colonial Leasing*, 731 P.2d at 487). Conversely, if after considering such evidence, the court determines that the language of the contract is not ambiguous, then the parties' intentions must be determined solely from the language of the contract.

■ With these principles in mind, we turn to the evidence submitted by Ward and the language of the release agreement. Ward offered evidence that the parties did not intend the agreement to be a one-time release for all present and future crops but, rather, a release for all damages to one crop only, i.e., the 1988 safflower crop. We conclude that the language of the agreement is

never mentioned. This is insufficient to raise the issue for purposes of rule 15(b). The rule does not permit amendments to include issues which are only inferentially suggested by incidental evidence in the record. *See Cole v. Layrite Prods.*

*Co.*, 439 F.2d 958, 961 (9th Cir.1971); *Monod v. Futura, Inc.*, 415 F.2d 1170, 1174 (10th Cir. 1969). On remand, however, Ward should be afforded an opportunity to amend his pleadings to raise the issues of fraud and mutual mistake.

reasonably susceptible to such an interpretation. Under the agreement, Ward agrees to hold IFA harmless from "any and all damages caused by the spraying of my approximate nineteen acres of safflower." Although the phrase "of safflower" could be read to simply define the field, it could also be construed to specify the damage subject to the release.

Because the language of the agreement is reasonably susceptible to Ward's contended interpretation, we conclude that it is ambiguous, and any evidence relevant to prove its meaning is admissible. *See Pacific Gas & Elec. Co.,* 69 Cal.Rptr. at 564, 442 P.2d at 644; *see also Winegar,* 813 P.2d at 108 (stating that contract language is ambiguous "if it is capable of more than one reasonable interpretation"). Indeed, exclusion of such evidence would deny the relevance of the parties' intentions and defeat the principle of contract interpretation that "the intentions of the parties are controlling." *Winegar,* 813 P.2d at 108. Furthermore, excluding such evidence would by no means gut the purpose of the parol evidence rule, which is "to limit the ability of the finder of fact (the jury) to believe testimony contradicting integrated writings." *Corbin* § 572C (Supp.1994). This is not a case where the extrinsic evidence, if believed by the fact finder, would contradict the parties' written agreement. Accordingly, we hold that extrinsic evidence is admissible as to the issue of what damage the parties intended to cover with the release.[6]

We reverse the grant of summary judgment and remand to the trial court for further proceedings.

STEWART, Associate C.J., and HOWE, J., concur.

RUSSON, Justice, concurring in the result:

I concur in the result only. In my opinion, the agreement is ambiguous inasmuch as it is susceptible to two different interpretations. The agreement reads:

6. This holding makes it unnecessary for us to address Ward's argument that the parties orally

AGREEMENT

Upon payment of $4901.27, receipt of which is hereby acknowledged ($900.00 check and $4001.27 credit to my account), I, Earl H. Ward, hereby agree to release and hold harmless Intermountain Farmers Association for any and all damages caused by the spraying of my approximate nineteen acres of safflower.

This agreement can be reasonably read to release Intermountain Farmers Association (IFA) for any and all damages caused by the spraying of the nineteen acres which happened to be planted in safflower. Alternatively, it could be reasonably read to release IFA for any and all damages caused by the spraying of the safflower, which happened to cover approximately nineteen acres. Either interpretation is reasonable. Therefore, the provision is ambiguous and requires extrinsic evidence to establish the intent of the parties. *See Faulkner v. Farnsworth,* 665 P.2d 1292, 1293 (Utah 1983). This reason and this reason alone is sufficient to reverse and remand this matter to the trial court for further proceedings.

I disagree, however, with the imprudent and disruptive rule of construction enunciated in the majority's opinion. The proposed rule would allow litigants to present extrinsic evidence to establish ambiguity in an otherwise clear contract provision. This rule contravenes the maxim consistently applied by this court:

In interpreting a contract, the intentions of the parties are controlling. If the contract is in writing and the language is not ambiguous, the intention of the parties must be determined from the words of the agreement. *A court may only consider extrinsic evidence if, after careful consideration, the contract language is ambiguous or uncertain.*

*Winegar v. Froerer Corp.,* 813 P.2d 104, 108 (Utah 1991) (citations omitted) (emphasis added). While the majority cites to this passage in *Winegar,* it misconstrues its meaning by stating that it stands for the

modified their agreement.

permissive proposition that "a court *may* consider extrinsic evidence if the meaning of the contract is ambiguous or uncertain." (Emphasis added.) However, the rule established by this court in *Winegar* is not simply permissive; rather, it states that a court may consider extrinsic evidence *only if* the contract is ambiguous or uncertain. *Id.* In holding that a court may consider extrinsic evidence to determine if a contract is ambiguous, the majority ignores well-settled precedent in favor of an approach that invites parties to create ambiguity in even the clearest contract provisions.

Moreover, the rule espoused by the majority is not necessary. This court has previously held that whether a contract is ambiguous is a question of law, *Fitzgerald v. Corbett,* 793 P.2d 356, 358 (Utah 1990), and it will be found to be ambiguous "if it is capable of more than one reasonable interpretation because of 'uncertain meanings of terms, missing terms, or other facial deficiencies.'" *Winegar,* 813 P.2d at 108 (quoting *Faulkner v. Farnsworth,* 665 P.2d 1292, 1293 (Utah 1983)). These rules are sufficient to give the trial courts ample guidance in determining whether a contract provision is ambiguous or uncertain, while also providing for appellate review to protect against bias resulting from "the judge's own linguistic education and experience." *Pacific Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.,* 69 Cal.2d 33, 69 Cal.Rptr. 561, 563, 442 P.2d 641, 643 (1968) (citation omitted).

Not only does the rule set forth in the majority opinion conflict with established canons of contract interpretation, but it also upsets the expectations of contracting parties and litigation practices in contract disputes. Under the proposed rule, written instruments containing clear provisions could be varied or controlled by extrinsic evidence, making reliance upon such contracts a risky proposition. Further, under the majority's rule, IFA's motion for summary judgment may be the last such motion filed in any contract dispute. When a motion for summary judgment can be defeated merely by the opposing party's affidavit averring that an otherwise clear contract provision was intended to mean something different, attorneys will discontinue the futility of composing summary judgment motions, and every contract dispute will be formally resolved only through trial.

ZIMMERMAN, Chief Justice, dissenting:

I dissent from the majority's conclusion that the release agreement is ambiguous. As the majority recognizes, releases are contractual and should be read according to well-developed rules of contract interpretation. *See Simonson v. Travis,* 728 P.2d 999, 1001–02 (Utah 1986). However, the majority's holding that a court may consider extrinsic evidence in determining whether a contract is ambiguous unjustifiably departs from established Utah precedent.

This court has repeatedly and consistently held that a court may not consider extrinsic evidence in interpreting a contract without finding, as a preliminary matter, that the contract is ambiguous on its face. As we stated in *Faulkner v. Farnsworth,* 665 P.2d 1292 (Utah 1983):

> When a contract is clear on its face, extraneous or parol evidence is generally not admissible to explain the intent of the contract. But when a contract is ambiguous, because of the uncertain meaning of terms, missing terms, or other facial deficiencies, parol evidence is admissible to explain the parties' intent. *Whether an ambiguity exists is a question of law to be decided before parol evidence may be admitted.*

*Id.* at 1293 (emphasis added) (citations omitted); *accord Winegar v. Froerer Corp.,* 813 P.2d 104, 108 (Utah 1991); *Fitzgerald v. Corbett,* 793 P.2d 356, 358 (Utah 1990); *Winegar v. Smith Inv. Co.,* 590 P.2d 348, 350 (Utah 1979); *see also Plateau Mining Co. v. Utah Div. of State Lands & Forestry,* 802 P.2d 720, 725 (Utah 1990) ("Parol evidence is generally not admissible to explain the intent of a contract which is clear on its face."); *Ron Case Roofing & Asphalt Paving, Inc. v. Blomquist,* 773 P.2d 1382, 1385 (Utah 1989) ("The use of extrinsic evidence is permitted only if the document appears to incompletely express the parties' agreement or if it is ambiguous in expressing that agreement."); *Atlas Corp. v. Clovis Nat'l Bank,* 737 P.2d 225, 229 (Utah 1987); *Union Bank v. Swen-*

son, 707 P.2d 663, 665 n. 1 (Utah 1985); *Rice, Melby Enters., Inc. v. Salt Lake County,* 646 P.2d 696, 698 (Utah 1982); *Williams v. First Colony Life Ins. Co.,* 593 P.2d 534, 536 (Utah 1979); *Big Butte Ranch, Inc. v. Holm,* 570 P.2d 690, 691 (Utah 1977); *E.A. Strout W. Realty Agency, Inc. v. Broderick,* 522 P.2d 144, 145 (Utah 1974).

In a clear departure from this long-standing rule, the majority concludes that even if a written contract contains no facial deficiencies which render the contract ambiguous, a court may find ambiguity by reference to extrinsic evidence. It is only this departure that enables the majority to consider extrinsic evidence, find ambiguity in the release agreement, and then reach its preferred result.

In *State v. Menzies,* 889 P.2d 393, 399 (Utah 1994), this court explained that under the doctrine of stare decisis, it " 'will follow the rule of law which it has established in earlier cases, unless clearly convinced that the rule was originally erroneous or is no longer sound because of changing conditions and that more good than harm will come by departing from precedent.' " *Id.* (quoting John Hanna, *The Role of Precedent in Judicial Decision,* 2 Vill.L.Rev. 367, 367 (1957)).

Because the majority has not expressed, and I cannot conceive of, any legitimate reason to overrule this court's settled precedent on this issue, I would not consider extrinsic evidence to make the ambiguity determination in the instant case. Without considering extrinsic evidence, I find the release agreement to be clear and unambiguous.

The release agreement holds IFA harmless from "*any and all damages caused by the spraying* of my approximate nineteen acres of safflower." (Emphasis added.) Ward contends that the phrase "of safflower" creates a question of whether he was releasing IFA from damages done to the safflower or damages done to the field. I disagree. The prepositional phrase "of safflower" does nothing more than identify the particular act of spraying that gave rise to IFA's potential liability. The release agreement does not hold IFA harmless from damage to the safflower crop—it holds IFA harmless from *any*

*and all* damages arising as a result of *the spraying* of the field.

Because the release agreement is clear and unambiguous, I would hold that the trial court did not err when it refused to allow the introduction of extrinsic evidence to vary the terms of the agreement. I would affirm the judgment of the district court.