**Jane Ann TAYLOR, Plaintiff and Appellant,**

v.

**Marc Richard HANSEN, Defendant and Appellee.**

No. 960774–CA.

Court of Appeals of Utah.

May 7, 1998.

A. Howard Lundgren and Keith E. Taylor, Salt Lake City, for Plaintiff and Appellant.

Patricia A. O'Rorke, Midvale, for Defendant and Appellee.

Before DAVIS, WILKINS and GREENWOOD, JJ.

## OPINION

GREENWOOD, Judge:

Jane Ann Taylor appeals the trial court's denial of her Motion to Compel Defendant to Sign Trust Agreement and her Motion for Judgment for Delinquent Child Care Costs and for Certain Other Relief. She also appeals the trial court's imposition of Rule 11 sanctions against her. We affirm in part and reverse in part.

## BACKGROUND

Jane Ann Taylor and Marc Hansen were married in 1989. They had two children. On August 1, 1995, Taylor filed for divorce from Hansen. In January 1996, Taylor filed an affidavit with the court, in which she averred that both parties "endorse[ ] the stipulation and motion for entry upon Findings and Decree." The affidavit stated that "[t]he Findings and Decree are consistent in every respect with the Complaint on file . . . and with our agreed settlement of the matter." The divorce court's Findings of Fact stated that "[a]ll matters relating to . . . property division . . . have been agreed to by the parties and are set forth in detail in the judgment and decree of divorce . . . entered contemporaneously herewith."

The portions of the divorce decree pertinent to issues on appeal include Paragraph 4(c), which ordered Hansen, "per the applicable statutes," to reimburse Taylor for one-half of any child care costs or expenses incurred by her because of her career or occupational training and/or employment. The decree included no requirements for documentation and proof.

Paragraph 12 of the decree awarded to Hansen "in his capacity as a Trustee" 214,639 shares of Cambric Graphics common stock. That paragraph ordered Hansen to

hold and deal with [the stock] as Trustee for the sole and exclusive use and benefit of the two minor children . . . pursuant to the terms of a Trust Agreement to be prepared agreed to and executed by [the parties] pursuant to this Judgment and Decree of Divorce. The . . . Agreement shall, in addition to *normal and usual provisions with respect to investing and preserving the assets and income of the trust for the use and benefit of the children,* provide (i) for annual accountings to be made by [Hansen] to [Taylor] . . . , (ii) for disbursement for the benefit of the children for their health, education, welfare, missions . . . and for their post-high school education, with the corpus to be distributed to the children in equal shares upon their respective 25th birthdays, and (iii) in the event of [Hansen's] death, Zion's Bank and Trust Company shall become the substitute trustee.

(Emphasis added.)

After entry of the divorce decree, Taylor mailed Hansen a proposed draft of the "Marc Richard Hansen Irrevocable Trust Agreement and Declaration of Trust." Hansen rejected the proposed trust agreement, stating it diverged from the terms provided in the parties' settlement agreement and divorce decree.

Hansen then sent Taylor a proposed draft of the trust agreement. Hansen's proposed trust agreement was consistent with the decree and included statutory provisions regarding powers of a trustee. *See* Utah Code Ann. § 75–7–402 (1993).

Taylor rejected Hansen's proposed trust agreement and filed a Motion to Compel Defendant to Sign Trust Agreement, or alternatively, to Amend the Judgment and Decree of Divorce. Taylor claimed her proposed trust agreement was more closely aligned with the requirements of the divorce decree. She asked that the court either order Hansen to sign her proposed trust agreement or, "in the alternative, to award [the stock] to [Taylor] as her separate property representing her equal share of this portion of the marital estate." Taylor also requested her attorney fees and costs associated with bringing the motion.

Hansen opposed Taylor's motion, claiming it was procedurally defective. Hansen argued that Taylor's proposed trust agreement contained provisions not contemplated by the divorce decree and that Taylor was effectively asking the court to modify the decree without first having filed a petition to modify under Rule 6–404(1) of the Utah Code of Judicial Administration.[1] Hansen asked the

---

1. Rule 6–404 provides, in pertinent part:
   (1) Proceedings to modify a divorce decree shall be commenced by the filing of a petition to modify in the original divorce action. Service of the petition and summons upon the opposing party shall be in accordance with the requirements of Rule 4 of the Utah Rules of Civil Procedure. No request for a modification of an existing decree shall be raised by way of an order to show cause.
   Utah Code Jud. Admin. R6–404(1).

court to deny Taylor's request for attorney fees and costs and instead asked that he be awarded his attorney fees and costs pursuant to Rule 11 of the Utah Rules of Civil Procedure because, he argued, Taylor's motion to compel was "not warranted by existing law" and because he had been required to respond to Taylor's "procedurally defective motion to modify the divorce decree."

Taylor filed a Reply Memorandum, withdrawing her alternate prayer for relief "to amend the Judgment and Decree of Divorce." Taylor also filed a second motion with the court, seeking reimbursement of delinquent child care costs. Hansen's response to the motion claimed Taylor had complied with neither the statutory nor decree requirements for verification of child care costs.

The trial court entered an order basically denying both of Taylor's motions. In this order, the trial court also denied Taylor her request for attorney fees and costs and awarded Hansen attorney fees and costs pursuant to Rule 11. Hansen subsequently filed a motion for an award of attorney fees, seeking judgment in a specific amount. Prior to the trial court acting on that motion, Taylor filed a notice of appeal. Thereafter, the trial court entered an order granting fees to Hansen, fixing the dollar award amount.

## ISSUES

Hansen initially challenges this court's jurisdiction to hear the appeal, claiming that because the trial court had not determined the amount of the attorney fee award before Taylor brought her appeal, the appeal was not taken from a "final order" as required by Rule 3 of the Utah Rules of Appellate Procedure. Taylor claims on appeal that the trial court erred in (1) denying her motion to compel Hansen to sign her proposed trust

agreement, (2) denying her Motion for Reimbursement of Child Care Costs, (3) imposing Rule 11 sanctions upon her, and (4) denying her motion for attorney fees. Hansen requests his attorney fees on appeal pursuant to Rule 33 of the Utah Rules of Appellate Procedure.

## ANALYSIS

### Jurisdiction

As a threshold issue, we must determine if Taylor's appeal is from a "final order" as required under Rule 3 of the Utah Rules of Appellate Procedure.[2] That is, when attorney fees have been awarded to a party but the amount of those fees has not yet been determined by court order, is the case sufficiently final to permit filing of an appeal?[3]

The United States Supreme Court has held that proceedings for attorney fees and those under Rule 11 are collateral matters that do not address the merits of a party's cause of action, enabling federal courts to consider them after an order on the merits has been issued. *See Cooter & Gell v. Hartmax,* 496 U.S. 384, 395–96, 110 S.Ct. 2447, 2455–56, 110 L.Ed.2d 359 (1990). The Court noted that "motions for costs or attorney's fees are 'independent proceedings supplemental to the original proceeding and not a request for a modification of the original decree.'" *Id.* at 395, 110 S.Ct. at 2455 (citation omitted). The Utah Supreme Court has similarly held that Rule 11 sanctions are collateral and do not go to the merits of a case. *See Barton v. Utah Transit Auth.,* 872 P.2d 1036, 1040 (Utah 1994); *see also Saunders v. Sharp,* 818 P.2d 574, 578 (Utah Ct. App.1991) ("Most appellate courts that have addressed the propriety of a post-judgment motion for attorney fees have concluded that the issue of attorney fees involved a collater-

---

2. Rule 3 provides, in pertinent part:

    (a) An appeal may be taken from a district or juvenile court to the appellate court with jurisdiction over the appeal from all final orders and judgments, except as otherwise provided by law, by filing a notice of appeal with the clerk of the trial court within the time allowed by Rule 4.

Utah R.App.P. 3(a).

3. We note that this question is not resolved by Rule 4(b), which provides that when certain types of postjudgment motions are brought, a notice of appeal filed after the motion but prior to its disposition is ineffective, or by Rule 4(c), which provides that a notice of appeal filed after the announcement of a decision but before its entry will be treated as though filed after such entry and on the day thereof. *See* Utah R.App.P. 4.

al matter, and thus the matter was appropriately considered by the trial court after an appeal was filed." (footnote omitted)).

No Utah appellate decision has squarely addressed the issue before us, although its resolution was implied in dicta in *Bunch v. Englehorn*, 906 P.2d 918, 919–20 & n. 1 (Utah Ct.App.1995) (accepting jurisdiction over appeal even though issue of attorney fees was still pending and noting that during oral argument, defendant conceded trial court's order was final judgment even if he chose never to request attorney fees). We therefore look to federal cases construing comparable rules of appellate procedure. *See Gold Standard, Inc. v. American Barrick Resources Corp.*, 805 P.2d 164, 168 (Utah 1990) ("In construing our rule, we freely refer to authorities which interpreted the federal rule.").

■ The issue before us was addressed by the United States Supreme Court in *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 108 S.Ct. 1717, 100 L.Ed.2d 178 (1988). The Court accepted the case because of a split on the issue in the circuit courts, typified in the cases of *Holmes v. J. Ray McDermott & Co.*, 682 F.2d 1143, 1146 (5th Cir. 1982), and *International Ass'n. of Bridge, Structural, Ornamental, & Reinforcing Ironworkers' Local Union 75 v. Madison Indus., Inc.*, 733 F.2d 656, 658 (9th Cir.1984). *See Budinich*, 486 U.S. at 198, 108 S.Ct. at 1719–20. The Court stated,

The question before us, therefore, is whether a decision on the merits is a "final decision" as a matter of federal law under [the federal procedural statute] when the recoverability or amount of attorney's fees for the litigation remains to be determined.... A question remaining to be decided after an order ending litigation on the merits does not prevent finality if its resolution will not alter the order or moot or revise decisions embodied in the order....

... [W]e think it indisputable that a claim for attorney's fees is not part of the merits of the action to which the fees pertain. Such an award does not remedy the injury giving rise to the action, and indeed is often available to the party defending against the action.

*Id.* at 199–200, 108 S.Ct. at 1720–21. The Court recognized the need for a uniform rule to clarify the jurisdictional consequences. The Court then enunciated the following bright-line rule: "[A] decision on the merits is a 'final decision' for purposes of [the federal procedural statute] whether or not there remains for adjudication a request for attorney's fees attributable to the case." *Id.* at 202–03, 108 S.Ct. at 1722.

The Tenth Circuit had been one of the circuits previously holding that "if an award of attorney's fees is not reduced to a sum certain, it is not final." *Phelps v. Washburn Univ. of Topeka*, 807 F.2d 153, 154 (10th Cir.1986). We believe, however, that *Budinich* addressed the ability to appeal when the amount of fees is pending, as much as when recoverability has yet to be determined. Therefore, whether it is the application for fees, the amount, or both which are pending, the finality of a decision on the merits is unaffected. *See Dunn v. Truck World, Inc.*, 929 F.2d 311, 312 (7th Cir.1991). In *Dunn*, the trial court had entered judgment for plaintiff of $50,000 plus legal fees and costs. Several months later, the court entered judgment for a specific dollar amount of $16,666 for legal fees and $241 in costs. Defendants filed an appeal shortly thereafter. The *Dunn* court construed the *Budinich* opinion as holding that "a decision on the merits is final, and the time for appeal begins running, even though questions concerning attorneys' fees remain open. One who waits for the award of fees accordingly may forfeit review of the merits." *Id.* at 312. The fact that fees were awarded but not quantified is "an irrelevant detail." *Id. Dunn* observed that the rule will eliminate a case-by-case analysis, so that "both the parties and the court of appeals ... know with certainty when the time for appeal begins and ends." *Id.*

We are persuaded that the rule established by the *Budinich* case, and as clarified in *Dunn*, is sound and will provide clear guidance for appellate practice in Utah. Our adoption of this rule will eliminate uncertainty about the propriety of filing a notice of appeal when attorney fee issues are unre-

solved and avoid problematic situations when a party may delay or never apply for a quantification of fees.[4] Therefore, the appeal before us is from a final order under Rule 3, even though the issue of the amount of fees to be awarded was still pending before the trial court as of the date the notice of appeal was filed. We accordingly turn to the merits of Taylor's appeal.

### Trust Agreement

Taylor contends the trial court erred in finding the divorce decree to be an integrated contract that contained the final and complete expression of the parties' agreement regarding the Cambric stock held in trust by Hansen. Taylor claims the decree is ambiguous in its allocation of trustee powers and that the trial court erred in turning to Utah Code Ann. § 75-7-402 (1993) to interpret the decree's requirement that the trust contain "normal and usual provisions [respecting] investing and preserving the assets and income of the trust for [the children's benefit]." Taylor asserts that the parties' intent in signing the stipulation to the divorce decree should have been considered by the trial court. Hansen, however, claims that because the decree is clear and unambiguous, the trial court correctly excluded parol evidence and determined the parties' intent from the language of the decree itself.

■ We interpret a divorce decree according to established rules of contract interpretation. Cf. Whitehouse v. Whitehouse, 790 P.2d 57, 60 (Utah Ct.App.1990). In Ward v. Intermountain Farmers Association, 907 P.2d 264 (Utah 1995), the Utah Supreme Court reviewed the analysis that courts must use in determining whether a contract is ambiguous: "When determining whether a contract is ambiguous, any relevant evidence must be considered." Id. at 268. A court must "consider the writing in light of the surrounding circumstances." Id. However, if the court considers such evidence and determines that the language of the contract is unambiguous, "then the parties' intentions must be determined solely from the language

of the contract." Id. "Language in a written document is ambiguous if the words used may be understood to support two or more plausible meanings." Whitehouse, 790 P.2d at 60 (emphasis added); see also R & R Energies v. Mother Earth Indus., Inc., 936 P.2d 1068, 1074 (Utah 1997) (" 'To demonstrate ambiguity, the contrary positions of the parties must each be tenable.' " (citation omitted)). Finally, whether a contract is ambiguous is a question of law, which we review for correctness. See Interwest Constr. v. Palmer, 923 P.2d 1350, 1358–59 (Utah 1996).

■ The trial court found that all matters relating to property division had been agreed to by the parties and were detailed in the Judgment and Decree of Divorce. The decree itself provides that Hansen, as Trustee, will manage the Trust for the "exclusive use and benefit of [the children.]" The decree further provides that Zion's Bank will become substitute trustee in the event of Hansen's death. Taylor is named only once in reference to the Trust: Hansen is to execute annual accountings to Taylor regarding the Trust's status.

Taylor's proposed trust agreement, in contrast, provides that cash dividends are to be immediately paid and distributed to the children's custodial parent/guardian. It also names Taylor as alternate trustee in the event that Hansen is unable to fulfill his trustee duties. Furthermore, it requires written consent of Taylor or the court prior to any sale, transfer, encumbrance, or disposition by the trustee of the stock. Last, it provides that rights of survivorship, should the children die before age 25 and leave no issue, will revert to Taylor.

There is no support in the decree for Taylor's proposed trust agreement. The decree makes provision neither for payment of cash dividends to Taylor nor for reversion of the trust corpus to Taylor under rights of survivorship. Furthermore, nothing in the decree references the need for Taylor or the court to consent to any sale, transfer, encumbrance or disposition of stock by Hansen in his

---

4. A party may wish to deliberately postpone these matters pending a final determination of the merits on appeal.

capacity as trustee.[5] Accordingly, we do not find Taylor's assertions regarding intent "tenable." *See R & R Energies,* 936 P.2d at 1074. Because the decree is unambiguous in its assignment of duties to the trustee, the trial court correctly denied Taylor's motion to compel Hansen to execute her proposed trust agreement.

### Reimbursement of Child Care Costs

Taylor next argues the trial court erroneously denied her Motion for Reimbursement of Child Care Costs, claiming the court wrongly interpreted Utah Code Ann. § 78-45-7.16 (1996) regarding the documentation required to prove child care expenses and to receive reimbursement therefor.

We review a trial court's findings of fact under a clearly erroneous standard. *State v. Pena,* 869 P.2d 932, 935 (Utah 1994). "For a reviewing court to find clear error, it must decide that the factual findings made by the trial court are not adequately supported by the record, resolving all disputes in the evidence in a light most favorable to the trial court's determination." *Id.* at 935-36. Statutory interpretation presents a question of law which we review for correctness. *See Gull Labs., Inc. v. Utah State Tax Comm'n,* 936 P.2d 1082, 1084 (Utah Ct.App.1997).

■ Section 78-45-7.16 of the Utah Code provides:

(2)(a) If an actual expense for child care is incurred, a parent shall begin paying his share ... immediately upon presentation of proof of the child care expense....

(b)(i) In the absence of a court order to the contrary, a parent who incurs child care expense shall provide *written verification* of the cost and identity of a child care provider to the other parent upon initial engagement of a provider and thereafter on the request of the other parent.

...

(3) [A] parent incurring child care expenses may be denied the right to receive credit for the expenses or to recover the other parent's share of the expenses if the parent incurring the expenses fails to comply with Subsection (2)(b).

Utah Code Ann. § 78-45-7.16 (1996) (emphasis added). The "proof" of child care expenses that Taylor submitted was, in the trial court's words, merely "a photocopied collage of various pieces of information," mostly consisting of handwritten dates without names or addresses, a typewritten notation that appeared to be a receipt but that had "no reference as to its origin or for what the payment was made," a "signed receipt from Sunshine Kids Daycare for July 9, 1996, in the amount of $27.00," and "some other typewritten notation with no information at all, [other than] two amounts shown, $126.00 and $140.00." As proof of her full-time student status, Taylor submitted to the court a "computer generated verification of information" from her official University of Utah record. The verification form gave Taylor's name and social security number, and stated that she was enrolled full time between September 25, 1996, and December 13, 1996. The trial court found these combined documents to be insufficient to verify Taylor's actual child care expenses, stating that because the statute clearly required payment for those child care costs related to employment or education, "it would seem inequitable that [Hansen] not at least be provided with some means by which he can verify the fact that they were so incurred, and that they were in fact 'reasonable.'" Our review of the record persuades us there is ample support for such a finding.

The trial court's requirements for what Taylor must do to verify her child care expenses are consistent with the need for "written verification" set forth in section 78-45-7.16. Thus, we disagree with Taylor's assertion that the court misinterpreted that

---

**5.** We note that the trial court appropriately looked to Utah Code Ann. § 75-7-402 (1993) to determine "normal and usual" trust provisions. Section 75-7-402(1) provides that "a trustee has the power to perform, without court authorization, every act which a prudent man would perform for the purposes of the trust." *Id.* § 75-7- 402(1). Furthermore, section 75-7-402(2) states that a trustee "has a duty to act with due regard to his obligation as a fiduciary." *Id.* § 75-7-402(2). Finally, section 75-7-402(3) generally allows a trustee to hold and dispose of assets for the benefit of the trust. *See id.* § 75-7-402(3).

statute. Furthermore, because Taylor's documentation failed to meet the verification requirements, the trial court did not abuse its discretion in denying Taylor's Motion for Reimbursement of Child Care Expenses. Finally, we note that the trial court's ruling provided that Taylor was not precluded from filing a future motion for the same or similar relief, so long as she complied with the court's established guidelines for verification. We accordingly affirm the trial court's denial of Taylor's motion.

*Rule 11 Sanctions*

In *Barnard v. Sutliff,* 846 P.2d 1229, 1233–35 (Utah 1992), the Utah Supreme Court adopted a three-tiered standard of review for trial court rulings under Rule 11. Under this standard,

> [t]he trial court's findings of fact are reviewed under the clearly erroneous standard. The trial court's ultimate conclusion that rule 11 was violated and any subsidiary legal conclusions are reviewed under the correction of error standard. And the trial court's determination as to the type and amount of sanction to be imposed is reviewed under the abuse of discretion standard.

*Id.* at 1234. In addition, this court "grant[s] a measure of discretion to the trial court's application of the legal principle to the facts." *In re Adoption of R.N.L.,* 913 P.2d 761, 763 (Utah Ct.App.1996) (citing *State v. Pena,* 869 P.2d 932, 938–39 (Utah 1994)).

Rule 11 of the Utah Rules of Civil Procedure provides, in pertinent part:

> The signature of an attorney or party constitutes a certification by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry[,] it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.... If a pleading, motion, or other paper is signed in violation of this rule, the court ... shall impose upon the person who signed it, ... an appropriate sanction, which may include ... a reasonable attorney's fee.

Utah R.Civ.P. 11. In determining whether conduct violates Rule 11, the court must focus on whether the alleged violator's research into the law and facts surrounding a filing is "objectively reasonable under all the circumstances." *Sutliff,* 846 P.2d at 1236; *accord R.N.L.,* 913 P.2d at 763; *Taylor v. Estate of Taylor,* 770 P.2d 163, 171 (Utah Ct.App.1989).

In this case, the trial court awarded sanctions on the basis that Taylor's "behavior [was] absolutely unreasonable" and that her motion to compel was "improper and groundless." The court found Taylor's motion to compel "wholly without any merit whatsoever in law or fact" because her proposed trust agreement "completely ignore[d] and deviate[d] from the plain, unambiguous and clear language" of the decree and her motion "[brought] up marital property issues that for all legal purposes were completely disposed of by the Decree, ... [and was an attempt] to couch an obvious petition to modify ... as a Motion to Compel."

After reviewing the record, we are persuaded that the trial court's conclusion that Taylor violated Rule 11 is error. Taylor's request that the trial court interpret the terms of the divorce decree was neither meritless nor objectively unreasonable under the circumstances. Moreover, before the trial court's hearing on the motions, Taylor withdrew her alternative prayer for relief "to amend the Judgment and Decree of Divorce." *See* Utah R.Civ.P. 15 (permitting parties to amend pleadings). Thus, Taylor's motion was not procedurally defective, and Hansen was not required to respond to a "groundless" claim; accordingly, Rule 11 sanctions were not warranted. We therefore reverse the trial court's Rule 11 award of attorney fees and costs to Hansen.

*Attorney Fees*

Both parties raise additional arguments for an award of attorney fees. Taylor claims the trial court erred in denying her request for attorney fees and costs under Utah Code Ann. § 30-3-3 (1995). Hansen, however, urges us to affirm the trial court's denial of Taylor's request and to award him attorney fees and costs incurred on appeal, pursuant

to Rule 33 of the Utah Rules of Appellate Procedure.[6]

■ Section 30-3-3 of the Utah Code "grants trial courts the power to award attorney fees in divorce cases" but the award "must be based on evidence of the reasonableness of the requested fees, as well as the financial need of the receiving spouse." *Crouse v. Crouse*, 817 P.2d 836, 840 (Utah Ct.App.1991). Still, the decision whether or not to award attorney fees is within the sound discretion of the trial court, *see id.*, and we review a trial court's denial of fees under an abuse of discretion standard; *see Peterson v. Peterson*, 818 P.2d 1305, 1310 (Utah Ct.App.1991).

■ Because Taylor's motions were denied in their entirety, she was not entitled to an award of costs or fees, and the trial court did not abuse its discretion in refusing to award attorney fees or costs to Taylor under section 30-3-3. *See Haumont v. Haumont*, 793 P.2d 421, 427 (Utah Ct.App.1990) (denying attorney fees to wife who did not prevail on any issues and did not establish financial need on record).

■ Regarding Hansen's request for attorney fees incurred on appeal, we note that although this court is authorized under Rule 33 of the Utah Rules of Appellate Procedure to award attorney fees in frivolous appeals, we impose such sanctions only in egregious cases, "lest there be an improper chilling of the right to appeal erroneous lower court decisions." *Porco v. Porco*, 752 P.2d 365, 369 (Utah Ct.App.1988) (defining egregious cases as those in which appeal is " 'obviously without any merit' " and " 'taken with no reasonable likelihood of prevailing' " (citation omitted)). Because we do not believe Taylor's action in bringing this appeal reflects such conduct and because Taylor was successful in reversing the Rule 11 sanctions, we deny Hansen's request for attorney fees. *See id.* at 368-69.

**6.** Rule 33 provides:
(a) [I]f the court determines that a motion made or appeal taken under these rules is either frivolous or for delay, it shall award just damages, which may include single or double costs ... and/or reasonable attorney fees, to the prevailing party....

## CONCLUSION

We hold that Taylor's appeal is from a "final order" under Rule 3 of the Utah Rules of Appellate Procedure and that this court has jurisdiction to hear an appeal even when attorney fee issues remain unresolved. We further hold that the trial court did not abuse its discretion in: (1) denying Taylor's motion to compel Hansen to sign her proposed trust agreement; (2) denying Taylor's Motion for Reimbursement of Child Care Costs; or (3) refusing to award attorney fees to Taylor. Accordingly, we affirm the trial court's rulings on those issues. We do, however, reverse the imposition of Rule 11 sanctions and, in addition, deny Hansen's request for attorney fees on appeal.

DAVIS, P.J., and WILKINS, Associate P.J., concur.

(b) ... For the purposes of these rules, a frivolous appeal, motion, brief, or other paper is one that is not grounded in fact, not warranted by existing law, or not based on a good faith argument to extend, modify, or reverse existing law.
Utah R.App.P. 33.