2014 UT App 145

**SIMMONS MEDIA GROUP, LLC,**
Plaintiff and Appellee,

v.

**WAYKAR, LLC; Karen P. McBride;**
**and Jamie Evans, Defendants**
**and Appellants.**

No. 20120335–CA.

Court of Appeals of Utah.

June 26, 2014.

886

Steve K. Gordon and Jarom B. Bangerter, Park City, for Appellants.

Troy L. Booher, Erin B. Hull, Wade R. Budge, Salt Lake City, Noella A. Sudbury,

Michael L. Molen, and Beth E. Kennedy, for Appellee.

Judge J. FREDERIC VOROS JR. authored this Opinion, in which Judges JAMES Z. DAVIS and JOHN A. PEARCE concurred.

## Opinion

VOROS, Judge:

¶1 Along the Wasatch Front, Interstate 15 is festooned with billboards. This case concerns one of them. Simmons Media Group, LLC leased the billboard site from Waykar, LLC. Simmons later sued Waykar and the other defendants (collectively, Waykar) for breach of a right of first refusal. The district court granted partial summary judgment in favor of Simmons and, after an evidentiary hearing, resolved all remaining issues in favor of Simmons. We affirm the judgment of the district court in all respects. We also award reasonable attorney fees on appeal to Simmons.

## BACKGROUND

¶2 In 1980, Karen P. McBride acquired property (the Property) on the west side of I-15 in Utah County. When Karen[1] acquired the Property, it already hosted a billboard on the "far northern corner of the Property" under a lease with an advertising company.

¶3 In 1991, Wayne McBride, Karen's then-husband, renewed the original lease with the Underland Group, who managed the billboard at the time. The renewed lease describes the location of the leased property as "500 West 2000 South." This imprecise description reflects the shorthand Wayne had used "for years to describe the Property." Lavorn Spark, the Underland Group's representative, and Wayne signed the renewed lease. Both Wayne and Spark intended the renewed lease to govern the Property. The renewed lease contains a right of first refusal. The right is triggered when the lessor "decide[s] ... to sell the premises" and receives an offer from a third party:

> In the event lessor shall decide during the term of this lease to sell the premises described herein, lessor shall give written notice to Underland Group of the terms and price offered by a third party. Underland Group shall be entitled for thirty (30) days to acquire the premises on the terms and conditions in said notice. If Underland Group does not exercise said right of purchase, the lessor shall not sell the premises on other terms for six (6) months. Thereafter, Underland Group shall have the same right as to any subsequent offer to purchase.

¶4 In 1996, Wayne, Karen, and Karen's father formed a company and gave it the portmanteau name Waykar, LLC. Wayne served as Waykar's president and registered agent. Karen transferred the Property to Waykar. However, in 1997 the two divorced and Wayne relinquished his interest in Waykar.

¶5 The following year the Underland Group assigned its lease rights to Simmons. Simmons maintained the billboard, rented it out, and sent Waykar annual rent payments per the terms of the renewed lease. Karen endorsed many of Simmons's checks on Waykar's behalf.

¶6 In 2002 Karen entered into a "Lease with Option to Purchase" agreement (the Lease/Option) with Jamie and Terry Evans. The Lease/Option granted the Evanses the exclusive right to purchase the Property. It also provided that any rent payments would be "credited toward the Purchase Price." Waykar did not offer Simmons an opportunity to exercise its right of first refusal or even notify Simmons of the Lease/Option. But Simmons later learned that Terry Evans had in a public meeting claimed to own the Property. Simmons sued, alleging that Waykar had breached the right of first refusal provision. Shortly thereafter Karen and her father sold Waykar with all of its assets—including the Property—to Hopper Holdings, an entity owned by Jamie and Terry Evans. Again, Waykar did not offer Simmons an opportunity to exercise its right of first refusal or even notify Simmons of the sale.

---

1. We refer to Karen and Wayne McBride by their first names for purposes of clarity.

¶ 7 After the close of discovery, Simmons moved for summary judgment. The district court granted partial summary judgment in favor of Simmons, ruling as a matter of law that the renewed lease was valid, that it governed the Property, and that Waykar had breached the right of first refusal. The district court then held an evidentiary hearing to determine the appropriate remedy. The court ruled that, had Waykar honored the right of first refusal, Simmons could have purchased the Property in 2002 for $224,480. Considering the time value of money and Simmons's lost profits, the district court determined that Simmons was entitled to purchase the property for $150,914.93. This appeal followed.

## ISSUES AND STANDARDS OF REVIEW

■ ¶ 8 First, Waykar contends that the district court erred in denying its motion to dismiss. "A ruling on a motion to dismiss presents a legal question that we review for correctness, affording no deference to the district court's decision." *Turner v. Staker & Parson Cos.*, 2012 UT 30, ¶ 7, 284 P.3d 600.

■ ¶ 9 Second, Waykar contends that the district court erred in granting Simmons's motion for rule 56(f) relief and staying Waykar's motion for summary judgment. "We review the grant or denial of a rule 56(f) motion using an abuse of discretion standard." *Brown v. Glover*, 2000 UT 89, ¶ 29, 16 P.3d 540. The district court "should liberally consider rule 56(f) motions unless they are dilatory or lacking merit." *Id.* (citation and internal quotation marks omitted).

■ ¶ 10 Third, Waykar contends that the district court erred in granting Simmons partial summary judgment because (1) Waykar did not ratify the renewed lease, (2) the renewed lease and the right of first refusal did not apply to the Property, and (3) Waykar did not breach the right of first refusal. We review a district court's "legal conclusions and ultimate grant or denial of summary judgment for correctness, and view[ ] the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Orvis v. Johnson*, 2008

UT 2, ¶ 6, 177 P.3d 600 (citation and internal quotation marks omitted).

■ ¶ 11 Fourth, Waykar contends that the district court erred in entering its order of partial summary judgment prematurely under rule 7(f) of the Utah Rules of Civil Procedure. We review an order granting summary judgment for correctness. *Id.* Nevertheless, a party suffers no prejudice when a district court corrects its alleged procedural error. *Crossland Sav. v. Hatch*, 877 P.2d 1241, 1243 n. 5 (Utah 1994).

■ ¶ 12 Fifth, Waykar contends that the district court erred in (1) granting specific performance, (2) determining the purchase price, and (3) allowing Simmons to offset its lost profits against the purchase price. "Specific performance as a remedy will stand and will not be upset on appeal in the absence of an abuse of discretion." *Covey v. Covey*, 2003 UT App 380, ¶ 18, 80 P.3d 553 (citation and internal quotation marks omitted).

¶ 13 Finally, Simmons seeks attorney fees on appeal on the ground that Waykar's briefing violates rule 24(k) of the Utah Rules of Appellate Procedure. Because this claim does not require review of any district court ruling, no standard of review applies.

## ANALYSIS

I. The District Court Properly Denied Waykar's Motion to Dismiss.

■ ¶ 14 Waykar contends that the district court erred in denying its motion to dismiss. Waykar sought dismissal on the ground that "Simmons's complaint failed to state a valid claim against Waykar for breach of the [right of first refusal]." Waykar argues that because the address on the renewed lease differs from the Property's actual location, the renewed lease does not as a matter of law govern the Property. Simmons responds that the district court properly denied Waykar's motion to dismiss because the complaint stated "a colorable claim that the renewed lease applies to the [Property] and that Waykar is equitably estopped from asserting otherwise."

¶ 15 A district court "may dismiss an action if the complaint 'fail[s] to state a claim upon which relief can be granted.'" *Osguthorpe v. Wolf Mountain Resorts, LC,* 2010 UT 29, ¶ 20, 232 P.3d 999 (alteration in original) (quoting Utah R. Civ. P. 12(b)(6)). A complaint states a claim upon which relief can be granted if it "alleges the facts and sets forth the legal basis for an available legal remedy." *Mack v. Utah State Dep't of Commerce, Div. of Sec.,* 2009 UT 47, ¶ 17, 221 P.3d 194. "A motion to dismiss should be granted only if, assuming the truth of the allegations in the complaint and drawing all reasonable inferences therefrom in the light most favorable to the plaintiff, it is clear that the plaintiff is not entitled to relief." *Hudgens v. Prosper, Inc.,* 2010 UT 68, ¶ 14, 243 P.3d 1275 (citation and internal quotation marks omitted). And "documents attached to a complaint are incorporated into the pleadings ... and are fair game for this court to consider in addition to the complaint's averments." *Oakwood Vill. LLC v. Albertsons, Inc.,* 2004 UT 101, ¶ 10, 104 P.3d 1226.

¶ 16 In the breach-of-contract context, a complaint states a claim upon which relief can be granted when it alleges "(1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages." *Bair v. Axiom Design, LLC,* 2001 UT 20, ¶ 14, 20 P.3d 388.

¶ 17 Here, Simmons's amended complaint alleges that the parties entered into the renewed lease, that Simmons paid rent to Waykar under the renewed lease, that the renewed lease pertains to the Property, that the "[renewed lease] contains a right of first refusal," and that "Evans and Waykar ... conspired to transfer the Property to Evans without giving Simmons the opportunity to purchase the Property on the same terms offered to Waykar by Evans." Simmons also attached the renewed lease to the amended complaint. Simmons's complaint therefore alleged the elements of breach of contract. Waykar, of course, contested the truth of these allegations. But "assuming the truth of the allegations" and "drawing all reasonable inferences therefrom in a light most favorable to [Simmons]," Waykar cannot show "that [Simmons] was not entitled to relief." *Hudgens,* 2010 UT 68, ¶ 14, 243 P.3d 1275 (citation and internal quotation marks omitted). Accordingly, we discern no error in the district court's denial of Waykar's motion to dismiss.

## II. The District Court Properly Granted Simmons Relief Under Rule 56(f).

¶ 18 Waykar contends that the district court erred in "denying Waykar's motion for summary judgment and entering the February 1, 2006 Order." Simmons responds that the February 1, 2006 order did not deny Waykar's motion for summary judgment, but instead properly granted Simmons rule 56(f) relief.

¶ 19 The contested order did not deny Waykar's motion for summary judgment. As Simmons asserts, the order merely granted Simmons rule 56(f) relief. Rule 56(f) of the Utah Rules of Civil Procedure allows a district court to grant a party additional time for discovery before ruling on a motion for summary judgment:

> Should it appear from the affidavits of a party opposing the motion [for summary judgment] that the party cannot ... present ... facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Utah R. Civ. P. 56(f).

¶ 20 Here, the district court did not deny Waykar's motion for summary judgment but stayed it and allowed Simmons to conduct additional discovery. Accordingly, Waykar's claim that the district court improperly granted summary judgment rests on a mischaracterization of the court's ruling. Waykar does not argue that 56(f) relief was unwarranted. Consequently, Waykar fails to show that the district court abused its discretion by granting Simmons rule 56(f) relief. *See Brown v. Glover,* 2000 UT 89, ¶ 29, 16 P.3d 540.

### III. The District Court Did Not Err in Granting Partial Summary Judgment.

¶ 21 Waykar contends that the district court erred in granting partial summary judgment to Simmons. "An appellate court reviews a [district] court's legal conclusions and ultimate grant or denial of summary judgment for correctness, and views the facts and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party." *Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600 (citation and internal quotation marks omitted).

### A. The Renewed Lease Is Valid.

¶ 22 First, Waykar argues that the district court erred because "an issue of fact existed regarding the validity of the [renewed lease]." According to Waykar, the renewed lease was invalid because Wayne did not own the Property and thus was not authorized to sign the renewed lease. Waykar alleges that "[n]o authorized representative of [Waykar] was aware that Wayne had signed the [renewed lease] until August or September of 2006."

¶ 23 Simmons responds that Wayne was authorized to sign the renewed lease but argues that even if he was not, Waykar ratified the renewed lease by cashing checks while Wayne acted as Waykar's president, one of its managing members, and its registered agent.

¶ 24 "It is well-established under Utah law that [s]ubsequent affirmance by a principal of a contract made on his behalf by one who had at the time neither actual nor apparent authority constitutes a ratification, which in general is as effectual as an original authorization." *Bullock v. Utah Dep't of Transp.*, 966 P.2d 1215, 1218 (Utah Ct.App. 1998) (alteration in original) (citation and internal quotation marks omitted). Moreover, "[r]atification ... need not be express. Any conduct which indicates assent by the purported principal to become a party to the transaction or which is justifiable only if there is ratification is sufficient. Even silence with full knowledge of the facts may ... operate as a ratification." *Bradshaw v. McBride*, 649 P.2d 74, 78 (Utah 1982) (citation and internal quotation marks omitted). "Once ratified, the voidable contract or deed is deemed valid." *Ockey v. Lehmer*, 2008 UT 37, ¶ 18, 189 P.3d 51. However, "a ratification requires the principal to have knowledge of all material facts and an intent to ratify." *Bradshaw*, 649 P.2d at 78. In general, a "principal is chargeable with, and bound by, the knowledge of ... his agent." *Jensen v. IHC Hosps., Inc.*, 2003 UT 51, ¶ 63, 82 P.3d 1076 (citation and internal quotation marks omitted) (omission in original).

¶ 25 Here, Waykar engaged in conduct that was "justifiable only if there [was] ratification." *Bradshaw*, 649 P.2d at 78. Specifically, Waykar, and even Karen personally, cashed checks from Simmons under the renewed lease. This conduct "indicates assent by [Waykar] to become a party to the transaction." *Id.*

¶ 26 Waykar responds that those payments are equally consistent with a belief that the lease was a month-to-month arrangement. On the contrary, Waykar was aware of the renewed lease. Wayne knew all the material facts of the renewed lease—indeed he negotiated and signed it. And Wayne became Waykar's president and registered agent when it was formed in 1996. Waykar is thus "chargeable with, and bound by" Wayne's knowledge of the renewed lease. *Jensen*, 2003 UT 51, ¶ 63, 82 P.3d 1076 (citation and internal quotation marks omitted). Thus, Waykar's assertion that "no authorized representative [of Waykar] was aware that Wayne had signed the [renewed lease] until August or September of 2006" is untrue: Wayne became Waykar's first president and registered agent in 1996, and he had signed the renewed lease in 1991.[2]

---

2. "It is well established that, where the agent has interests in the transaction adverse to the principal's, or where the agent colludes with third parties whose interests are adverse to the principal's interests, knowledge of the facts at issue will not be imputed to the principal." *Jensen v. IHC Hosps., Inc.*, 944 P.2d 327, 333 n. 1 (Utah 1997). Waykar does not allege that Wayne was conflicted in 1996.

¶ 27 Therefore, even if Karen did not originally authorize Wayne to enter into the renewed lease, undisputed facts establish that Waykar later ratified his action. Thus, Waykar fails to show that the district court erred in ruling that the renewed lease was valid.

### B. The Renewed Lease Applies to the Property.

¶ 28 Next, Waykar contends that the district court erred in granting partial summary judgment to Simmons because the renewed lease, "by its own express terms, does not apply to the [Property]." Waykar argues that the address used to identify the Property on the renewed lease misstates an essential term, rendering the lease invalid. Simmons responds that the renewed lease describes the Property adequately because it uses Wayne's shorthand version of the Property's description—the street address of the access road to the Property.

¶ 29 A valid lease must contain "(1) the identity of the property, (2) the agreed term, i.e., time period, and (3) the rental amount (rate) and time and manner of payment." *Brown's Shoe Fit Co. v. Olch*, 955 P.2d 357, 363 (Utah Ct.App.1998) (citation and internal quotation marks omitted). "However, the term essential to enforceability is not the legal description of the property, but 'the identity of the property.'" *GeoNan Props., LLC v. Park–Ro–She, Inc.*, 2011 UT App 309, ¶ 11, 263 P.3d 1169 (citing *Brown's Shoe*, 955 P.2d at 364). So long as the lease clearly identifies the property, "the manner in which it is identified is irrelevant to enforceability." *Id.* Furthermore, "[w]hether a contractual term or provision is ambiguous on its face is a question of law." *Flores v. Earnshaw*, 2009 UT App 90, ¶ 7, 209 P.3d 428 (citing *Daines v. Vincent*, 2008 UT 51, ¶ 25, 190 P.3d 1269). "When determining whether a contract is ambiguous, any relevant evidence must be considered." *Ward v. Intermountain Farmers Ass'n*, 907 P.2d 264, 268 (Utah 1995).

¶ 30 Here, the renewed lease describes the Property as located at 500 West 2000 South.

Waykar correctly observes that this address does not correspond to the physical location of the Property. Nevertheless, we agree with the district court that this description unambiguously identifies the property. Wayne testified that this address was one he "used for years to describe the [P]roperty." Both signers of the renewed lease—Wayne and Spark—stated in their affidavits that they understood that the renewed lease applied to the Property. Wayne and Spark did not believe they were entering into a lease for property situated at 500 West and 2000 South. They intended to renew a lease for property on which the Underland Group had previously managed the billboard. Accordingly, the district court did not err in concluding that the renewed lease adequately describes the Property.[3]

### C. Waykar Breached the Right of First Refusal.

¶ 31 Finally, Waykar contends that the district court erred in granting partial summary judgment for Simmons because "[e]ven if Simmons had established through undisputed evidence that the [renewed lease] was enforceable against Waykar, and even if Simmons had submitted undisputed evidence that the [renewed lease] applies to the [Property], its claim that Waykar breached the [right of first refusal] still failed as a matter of law." Waykar reasons that the 2005 sale did not trigger the right of first refusal because Karen did not sell the Property but the legal entity owning the Property. Simmons responds that the 2005 sale is "not the only— or dispositive—breach that the [district] court relied upon." Simmons argues that the district court independently ruled that Waykar breached the right of first refusal when it entered into the Lease/Option with the Evanses.

¶ 32 "This court will not reverse a ruling of the [district] court that rests on independent alternative grounds where the appellant challenges only one of those grounds." *Salt Lake County v. Butler,*

---

**3.** Waykar also argued that the Property consisted of two tax parcels and the renewed lease governed only one. But Waykar did not submit this argument, or even mention a tax parcel, until after summary judgment was granted. We therefore do not consider it.

*Crockett & Walsh Dev. Corp.,* 2013 UT App 30, ¶ 28, 297 P.3d 38; *see also Republic Outdoor Adver., LC v. Utah Dep't of Transp.,* 2011 UT App 198, ¶ 32, 258 P.3d 619 (declining to consider a challenge to an alternative basis for the court's grant of summary judgment where appellant failed to adequately challenge an independent basis for the court's ruling).

¶ 33 Here, Waykar challenges only one of the district court's alternative grounds for its ruling. The district court ruled that the right of first refusal was breached in 2005 when Karen sold Waykar, LLC to Hopper Holdings. But the district court also ruled that Waykar breached the right of first refusal in 2002 when "Jamie Evans and Karen McBride entered into a 'Lease with Option to Purchase' agreement for the sale of the property for which Simmons held the right of first refusal."

¶ 34 While Waykar challenges the district court's ruling with respect to the 2005 sale of the company, Waykar does not address—or even mention—the 2002 Lease/Option. Because Waykar has challenged only one of the "independent alternate grounds" for the district court's ruling, it has not demonstrated that the ruling lacks record support. *See Butler,* 2013 UT App 30, ¶ 28, 297 P.3d 38.

¶ 35 Because Waykar has failed to show that the district court erred in ruling (1) that the renewed lease was valid, (2) that the renewed lease and its right of first refusal governed the Property, and (3) that the right of first refusal was triggered and violated, we affirm the district court's grant of partial summary judgment.

## IV. Waykar Has Not Shown That the District Court Granted Summary Judgment Prematurely.

¶ 36 Waykar contends that the district court erred in entering partial summary judgment for Simmons before Waykar's deadline to file objections had passed. Waykar also contends that the district court erred in vacating and reentering the order a few months later. Simmons responds that we should "refuse to address [these] arguments as inadequately briefed under rule 24(k) of the Utah Rules of Appellate Procedure."

¶ 37 An adequately briefed argument "contain[s] the contentions and reasons of the appellant with respect to the issues presented ... with citations to the authorities, statutes, and parts of the record relied on." Utah R.App. P. 24(a)(9). " 'Implicitly, rule 24(a)(9) requires not just bald citation to authority but development of that authority and reasoned analysis based on that authority.' " *State v. Green,* 2004 UT 76, ¶ 13, 99 P.3d 820 (quoting *State v. Thomas,* 961 P.2d 299, 305 (Utah 1998)). An inadequately briefed claim is by definition insufficient to discharge an appellant's burden to demonstrate trial court error. *See Salt Lake County v. Butler,* 2013 UT App 30, ¶ 37 n. 5, 297 P.3d 38.

¶ 38 Here, in seven pages of argument on this issue, Waykar's brief identifies no rule of law that the district court allegedly violated. Instead, Waykar refers only to facts, most of which were submitted only after the court had already ruled on summary judgment. By failing to cite any authority, Waykar's brief fails to "discharge [Waykar's] burden to demonstrate trial error." *Id.*

¶ 39 Waykar also fails to mention that even if the district court did err, it cured the error when it vacated its order, heard Waykar's objections, considered Waykar's objections, and reentered the order. When a district court corrects its alleged procedural error, a party cannot claim prejudice. *Crossland Sav. v. Hatch,* 877 P.2d 1241, 1243 n. 5 (Utah 1994).

¶ 40 In light of the foregoing, we conclude that Waykar has failed to carry its burden of persuasion on appeal. *See Butler,* 2013 UT App 30, ¶ 37 n. 5, 297 P.3d 38.

## V. The District Court Did Not Err in Ordering Specific Performance, Awarding Lost Profits, and Determining the Purchase Price.

¶ 41 Finally, Waykar challenges the district court's order of specific performance. Waykar argues that the district court erred in ordering specific performance, in determining the purchase price, and in allowing

Simmons to offset its lost profits against the purchase price. Simmons responds that Waykar did not marshal the evidence to support its argument as required by our rules. We agree with Simmons.

¶ 42 Rule 24(a)(9) of the Utah Rules of Appellate Procedure states, "A party challenging a fact finding must first marshal all record evidence that supports the challenged finding." Utah R.App. P. 24(a)(9). The duty to marshal serves as a "natural extension of an appellant's burden of persuasion." *State v. Nielsen*, 2014 UT 10, ¶ 41, 326 P.3d 645. "'An appellant cannot demonstrate that the evidence supporting a factual finding falls short without giving a candid account of that evidence.'" *Dillon v. Southern Mgmt. Corp. Ret. Trust*, 2014 UT 14, ¶ 59, 326 P.3d 656 (quoting *State v. Mitchell*, 2013 UT App 289, ¶ 31, 318 P.3d 238). "Formal briefing requirements aside, an argument that does not fully acknowledge the evidence supporting a finding of fact has little chance, as a matter of logic, of demonstrating that the finding lacked adequate factual support." *Id.* (citation and internal quotation marks omitted); *accord Nielsen*, 2014 UT 10, ¶ 41, 326 P.3d 645.

¶ 43 Here, Waykar omits several uncomfortable but crucial facts. For example, it argues that the district court erred in granting specific performance because Simmons did not diligently assert its claim. But Waykar fails to disclose that the district court found that Waykar's own actions throughout the litigation created "a major source of delay in this case." Waykar also fails to disclose that Simmons complied with scheduling orders entered in this case, but that Waykar itself violated at least one scheduling order.

¶ 44 Additionally, in arguing that the district court "erroneously determined the [purchase] price," Waykar claims that the district court incorrectly used $488,000 as the amount of the option to purchase "even though according to the plain terms of the [Lease/Option], the correct figure was $498,000." However, Waykar does not acknowledge that Karen herself testified that the purchase price was $488,000 or that Terry Evans described the purchase price as $488,000 in a letter to Karen. For an appel-

lant to challenge a factual finding as unsupported by the evidence without acknowledging that *her own testimony* supports the finding constitutes a flagrant failure to marshal.

¶ 45 Finally, in arguing that the district court "erroneously awarded Simmons offsets against the [purchase] price," Waykar claims that the district court "awarded lost *gross* profits" and not lost *net* profits. This assertion misstates the district court's findings: in determining the purchase price, the district court found that "Simmons would have earned *net* profits for the signs totaling at least $207,480.00." Moreover, although Waykar claims that the district court failed to take into consideration the costs that Simmons would incur in managing the billboard, Waykar fails to identify any such costs.

¶ 46 In sum, Waykar's attempt to show that the district court's findings lack support in the record fails at the outset because Waykar does not "identify and deal with [the] supportive evidence." *Nielsen*, 2014 UT 10, ¶ 40, 326 P.3d 645. Accordingly, we affirm the district court's grant of specific performance, determination of the purchase price, and offset of lost profits.

## VI. Simmons Is Entitled to Attorney Fees on Appeal.

¶ 47 Simmons seeks attorney fees on appeal. Simmons argues that the inadequacies of Waykar's brief "have shifted onto Simmons the burden of argument, research and record review." Simmons asserts that this process "was painstaking, time-consuming, and costly." Simmons also reasons that we should award it attorney fees because, it asserts, Waykar has delayed the appeal process so it can continue making profits from the Property during the pendency of this appeal. Simmons notes that "while it has the right to specific performance at a price that reflects Simmons's lost profits through the time of final judgment, it will not be compensated for lost profits during the appeal period." Waykar responds that Simmons's request for attorney fees is "baseless and entirely without merit."

¶ 48 Rule 24(k) of the Utah Rules of Appellate Procedure requires a brief to be "concise, presented with accuracy, logically arranged with proper headings and free from burdensome, irrelevant, immaterial or scandalous matters." Utah R.App. P. 24(k). If the brief does not meet these requirements, rule 24(k) states that "the court may assess attorney fees against the offending lawyer." *Id.* This court has previously awarded attorney fees where the failure to file an opening brief that complied with rule 24(k) "placed a tremendous burden of factual and legal research on [opposing counsel]." *In re Estate of Pahl,* 2007 UT App 389, ¶ 17, 174 P.3d 642 (internal quotation marks omitted).

▌ ¶ 49 Here, several aspects of Waykar's brief fail to meet rule 24's requirement that briefs be "presented with accuracy" and "free from burdensome … matters." Utah R.App. P. 24(k). For example,

- Waykar purports to appeal from a February 1, 2006 order denying its motion for summary judgment. However, as explained above, this order does not deny Waykar's motion for summary judgment but instead grants Simmons 56(f) relief and stays Waykar's motion for summary judgment.
- Throughout the brief, Waykar raises arguments concerning the tax parcels without mentioning that the district court refused to hear those arguments because Waykar first raised them after the entry of summary judgment.
- Waykar cites no legal authority in support of three issues in its opening brief.
- Waykar fails to mention that the renewed lease is a renewal of a previous lease for the same billboard—an undisputed fact that illuminates the nature of the renewed lease and the property that the renewed lease governs.
- In arguing that the right of first refusal was never triggered, Waykar addresses only the 2005 transfer of ownership and fails to mention that the district court ruled that the 2002 Lease/Option also triggered the right of first refusal.
- Waykar fails to marshal evidence in support of the district court's determination of remedies: Karen challenges the purchase price determination without disclosing that her own testimony supports that determination.
- Waykar claims that no authorized representative of Waykar had knowledge of the renewed lease but fails to mention that Wayne—who signed the renewed lease—later became Waykar's first president and registered agent.

Considering these points, we agree that Waykar's violations of rule 24(k) "placed a tremendous burden of factual and legal research" on Simmons. *See In re Estate of Pahl,* 2007 UT App 389, ¶ 17, 174 P.3d 642 (internal quotation marks omitted). Consequently, we hold that the brief violates rule 24(k) of the Utah Rules of Appellate Procedure and accordingly award reasonable attorney fees.

¶ 50 Appellee also seeks attorney fees under rule 33 of the Utah Rules of Appellate Procedure. Simmons argues that Waykar brought this appeal for the purpose of delaying Simmons's acquisition of the Property and thus unfairly maximizing its own profits. In support, Simmons asks us to consider findings of the district court to the effect that Waykar raised immaterial and unreasonable objections, advanced disingenuous and baseless arguments, attempted to conceal the nature of the transaction, and delayed the litigation in an effort to receive the benefit of rising real estate prices. However, because we have already awarded attorney fees under rule 24(k), we need not address whether they should be awarded under rule 33 also.

## CONCLUSION

¶ 51 We affirm the judgment of the district court in all respects. In addition, we award Simmons reasonable attorney fees incurred on appeal. Finally, we remand for the district court to determine the amount of that award.